IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-HC-2047-BO

| | |
|---|---|
| GREGGORY G. MOSHER, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| FRANK L. PERRY, ) | |
| ) | |
| Respondent. ) | |
| ) | |

The matter comes before the court on respondent's unopposed motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) (DE 9). For the following reasons, the court grants respondent's motion.

**STATEMENT OF CASE**

On April 23, 2013, petitioner was convicted in the Onslow County Superior Court of negligent child abuse inflicting serious bodily injury and intentional child abuse inflicting serious bodily injury. See State v. Mosher, 235 N.C. App. 513, 761 S.E.2d 204 (2014). Petitioner was sentenced, pursuant to a presumptive range term of 58-79 months imprisonment. Id. at 206. Petitioner appealed, and on August 5, 2014, the North Carolina Court of Appeals affirmed the trial court's judgment. Id. at 208.

On May 15, 2014, petitioner filed a motion for appropriate relief ("MAR") in the Onslow County Superior Court. (Pet. Attach. (DE 1-2), pp. 15-18). Then, on January 16, 2016, petitioner

filed an amendment to his MAR.[1] (Id. (DE 1-1), pp. 7-14). On April 6, 2016, the superior court denied petitioner's MAR. (Resp't's Mem. Ex. 3). On May 5, 2016, petitioner filed a *pro se* petition for a writ of certiorari in the North Carolina Court of Appeals, which was denied. (Id. Exs. 4, 6).

On March 14, 2016, petitioner, filed the instant petition for a writ of habeas corpus *pro se* pursuant to 28 U.S.C. § 2254. Petitioner raised the following claims: (1) the trial court violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution when it allowed him to proceed while lacking the mental capacity to do so; (2) ineffective assistance of trial and appellate counsel; (3) inconsistent verdicts; and (4) the trial court failed to consider the undisputed evidence of mitigating factors at sentencing. Respondent subsequently filed a motion for summary judgment pursuant to Rule 56(a) arguing that petitioner's habeas petition is meritless. Although petitioner was notified of respondent's motion, he did not respond.

## STATEMENT OF FACTS

The facts as stated by the North Carolina Court of Appeals are summarized as follows:

> The evidence presented at trial tended to establish the following facts: In September of 2009, Defendant married Rebecca Mosher ("Ms. Mosher") and became a stepfather to her two young children, "Amy" and "Noah."[] Defendant was deployed to Iraq in December of 2009, and when he returned from his deployment, he lived with Ms. Mosher and the children at a home in Richlands, North Carolina. Their next-door neighbors, Jack Underwood ("Mr. Underwood") and Justus Underwood ("Mrs. Underwood"), had observed bruising on the children before the subject incidents.
>
> On 14 May 2010, Ms. Mosher, accompanied by Defendant, visited the Underwoods' home and requested that Mr. Underwood examine Noah's arm, which was swollen. Mr. Underwood recommended that

---

[1] Petitioner hired attorney Duane K. Bryant to prepare a MAR, which petitioner filed *pro se* because he fired his counsel before the date the MAR was due. (Pet. Attach. (DE 1-2), pp. 3-7 and 27-35).

2

Noah be taken to the hospital because he might have a broken arm or wrist. Mrs. Underwood testified that during this encounter, Ms. Mosher was standing behind Defendant and trying to catch her attention in a way that Mrs. Underwood interpreted as meaning: "This is suspicious; you need to pay attention." Later that day, Ms. Mosher showed Mrs. Underwood marks on the children's bodies, including bruising on Noah's arm, legs, and side and bruising on Amy's back. Mrs. Underwood further explained that "[t]he children did not have marks on them prior to [Defendant] coming home. They would mysteriously appear when [Ms. Mosher] would be out."

On the evening of 23 May 2010, Defendant was at home alone with Amy and Noah. At the time, Amy was two years old and Noah was three years old. Neither Amy nor Noah testified at trial; therefore, the evidence regarding the specific events giving rise to Defendant's convictions consisted entirely of Defendant's own testimony and testimony concerning the accounts he had provided to physicians and a social worker.

At approximately 7:00 p.m., Defendant began preparing a bath for Amy and Noah. Defendant turned on the water and placed the children into the bathtub. As the water was running and filling up the tub, Defendant heard his dog fighting outside and making a sound that Defendant described as "a vicious growl." Defendant testified that he left the children in the tub with the water running and went to check on the dog. He kicked another dog off of his dog, placed his dog's collar and chain back on, and returned to the bathroom. Defendant estimated that he had left the children in the tub for what "felt like a minute." Immediately upon returning to the bathroom, Defendant saw Noah standing outside the tub. Amy was still in the tub, screaming and "splashing to get out." Defendant grabbed Amy out of the tub and saw that her legs were peeling. He reached to turn off the water and noticed that the cold water faucet was off. When he pulled out the drain plug, he discovered the bath water was "hot."

Amy was taken to the hospital and remained hospitalized until 12 July 2010. She sustained burns to approximately 44 percent of her body and underwent two surgeries to remove the burned skin and replace it with healthy tissue. Dr. Kenya McNeal–Trice ("Dr. McNeal–Trice"), a board-certified pediatrician and a member of Amy's treatment team at the North Carolina Children's Hospital, was tendered and accepted as an expert witness in the field of pediatrics and child abuse and neglect. She testified to a reasonable degree of

3

medical certainty that Amy's injuries were consistent with an intentional—rather than accidental—burn and explained that the pattern of Amy's burn injuries was not consistent with the information Defendant had conveyed to her about how the injuries had occurred. Specifically, Dr. McNeal–Trice testified that Amy's burns were "more consistent with being exposed for a period of time in a still position in hot water and not splashing to get out." She explained that if Amy had been standing and splashing to get out, the backs of her legs would not have remained unburned and instead Amy would have sustained a circumferential burn "all the way around her leg."

In addition, Dr. McNeal–Trice opined that the fact that Amy did not burn her hands, stomach, or torso was inconsistent with a child splashing to get out of scalding hot water. Dr. McNeal–Trice noted that there were "sharp water demarcation lines" on Amy's thighs, a potential indication that the burn was intentionally inflicted, and that Amy had petechial bruising on her sternum, which was likely caused by "some type of either pressure or force" being applied to her chest.

Defendant's expert witness, Dr. Allen Dimick ("Dr. Dimick"), was tendered and accepted as an expert in the fields of burn trauma care, burn surgery, and pre-hospital emergency care. He examined Amy's medical records, records from the investigation conducted by the Onslow County Sheriff's Office, and photographs of her burns and testified to a reasonable degree of medical certainty that Amy's burns "were completely accidental and not intentional." Dr. Dimick testified that in his opinion, Amy likely suffered the second-degree "scald burns" on her back and buttocks from lying or falling back into the hot water and reacted to those burns by changing position to kneel on her knees, which resulted in the more severe burns to her thighs, legs, and the tops of her feet.

Dr. Dimick conceded, however, that he had "difficulty understanding" how Amy had sustained her particular burn injury pattern and that it was "hard to envision how that could occur" unless she had fallen backwards on her back into the water and then changed position to kneel on her knees. Dr. Dimick testified that he did not believe that Amy's injuries were consistent with someone "pushing her backward and holding her down," noting that the burns to her back were less severe, indicating a briefer exposure to the hot water. However, he did agree that Amy "certainly" could have sustained the

4

> burns to her back if she was pushed down into the water for a brief period of time.

Mosher, 761 S.E.2d. at 514-516.

## DISCUSSION

A. Motion for Summary Judgment

1. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

A federal court cannot grant habeas relief in cases where a state court considered a claim on its merits unless (1) the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see, e.g., Kernan v. Hinojosa, 136 S. Ct. 1603, 1604 (2016) (per curiam); Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (per curiam). A state-court decision is "contrary to" Supreme Court precedent if it either

"arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state-court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see White v. Woodall, 134 S. Ct. 1697, 1702–07 (2014).

Section 2254(d) "does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one." Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000) (en banc). Section 2254(d) also does not require a federal court to "offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings." Id. Moreover, a state court's factual determination is presumed correct, unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

Congress intended the standard in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") to be difficult to meet. See White, 134 S. Ct. at 1702; Harrington v. Richter, 562 U.S. 86, 102 (2011). "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington, 562 U.S. at 103. To prevail in an action brought under section 2254(d), a petitioner must show that "there was no reasonable basis for the state court to deny relief." Id. at 98.

2. Analysis

   a. Mental Capacity Claim

In his first claim, petitioner asserts that the trial court violated his rights pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution when it allowed petitioner to proceed at trial despite the fact that petitioner was not competent to stand trial. Petitioner raised this claim in his MAR, and the superior court denied the claim on the merits. In particular, the superior court found as follows:

> 12. Finally, the defendant's assertion that he lacked the mental capacity to stand trial in this case is without merit. Two separate evaluations were done in this case: one by Dr. Alan J. Crist, Clinical Psychologist with Coastal Carolina Neuropsychiatric Center dated June 14, 2012, and one by Dr. Allen Steed, Clinical Neuropsychiatrist with Carolina Psychological Health Services dated 10/1/12.
>
> Dr. Crist stated that he could not determine Mr. Mosher's capacity because the memory tests given were invalid in Dr. Crist's opinion because the defendant was exaggerating his memory impairment and that the results of those tests were inconsistent with his presenting complaint. Further, Dr. Crist stated that on the non memory tests, the defendant was functioning normally. His verbal problem solving tasks ability and single word reading skills were normal. His processing speed, visual scanning, attention and mental flexibility scored in the average range.
>
> Dr. Steed did not evaluate the defendant for capacity to proceed, but for a general neuropsychological evaluation. As was the case with Dr. Crist's evaluation, Dr. Steed's reports states that the result from his evaluation are "mixed in terms of the validity and reliability." Dr. Steed further stated that "Sgt. Mosher's performance on selected effort measures, including the test of memory malingering and the forced choice recognition from the CVLT-2, was highly atypical and improbable." Dr. steed also opined that "there is sufficient evidence to suggest some degree of symptom amplification on neurocognitive measures."

7

> Further, there was conducted a thorough colloquy with both counsel in this case as seen in Transcript pp. 20-41. During that time were very specific questions asked of both attorneys about the psychological reports of the defendant in this case, questions about the defendant's ability to assist his attorney and questions about the defendant's ability to assist Dr. Dimick. The court found that after this discussion that the defendant was competent to stand trial. Further, the next day (Transcript p. 153), the record reflects that defense counsel provided to the trial judge copies of the aforementioned psychological reports for the trial judge's review. After such review, the court left undisturbed its earlier finding that the defendant was in fact competent to stand trial.
>
> 13. The defendant has not shown any reason that demonstrates a manifest injustice which requires the court to grant the defendant a new trial or sentencing hearing. The defendant has not shown actual prejudice required to grant the relief requested.
>
> Therefore, the defendant's Motion is without merit and an evidentiary hearing is not necessary to resolve the issues presented by the motion.

(Resp't's Mem. Ex. 3, pp. 7-8).

The Due Process Clause of the Fourteenth Amendment prohibits states from trying and convicting mentally incompetent defendants. Pate v. Robinson, 383 U.S. 375, 384–86 (1966). The federal standard for competency to stand trial is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960). Competency claims can raise issues of both procedural and substantive due process. The Fourth Circuit Court of Appeals has set forth the standards for procedural and substantive due process competency claims:

> [A] defendant may make a procedural competency claim by alleging that the trial court failed to hold a competency hearing after the defendant's mental competency was put in issue. To prevail, the defendant must establish that the trial court ignored facts raising a

"bona fide doubt" regarding the defendant's competency to stand trial. Pate, 383 U.S. at 384-86[.] Even if a defendant is mentally competent at the beginning of the trial, the trial court must continually be alert for changes which would suggest that he is no longer competent. Drope v. Missouri, 420 U.S. 162, 180 [] (1975). Although there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed," proof "of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant." Id.

On the other hand, a defendant may make a substantive competency claim by alleging that he was, in fact, tried and convicted while mentally incompetent. Pate, 383 U.S. at 384-86[;] Dusky [v. United States], 362 U.S. [402 (1960)]. In contrast to a procedural competency claim, however, a defendant raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his incompetency by a preponderance of the evidence. Burket [v. Angelone], 208 F.3d [172,] 192 [(4th Cir. 2000)]. "'Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.'" Id. (quoting United States ex rel. Foster v. DeRobertis, 741 F.2d 1007, 1012 (7th Cir. 1984)). Similarly, "neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." Burket, 208 F.3d at 192.

Walton v. Angelone, 321 F.3d 442, 459-60 (4th Cir. 2003).

Beginning with petitioner's substantive due process claim, petitioner alleges that the superior court's finding of mental competency violated due process because the forensic exams it relied upon to determine competency were inconclusive. The record reflects that the superior court considered whether petitioner's short and long term memory impairment rendered him incompetent to stand trial. (TR. p. 2; Resp't's Mem. Ex. 3). In making its decision that petitioner was competent to stand trial, the trial court considered the psychological reports of clinical psychologist Dr. Alan J. Crist and clinical neuropsychiatrist Dr. Allen Steed. Petitioner does not set forth any facts which would give

9

rise to a bona fide doubt regarding his competency at either the time of trial or when he committed the offenses charged.[2] Accordingly, petitioner has not met his burden of rebutting the presumption of competency by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Walton, 321 F.3d at 459 ("[A] defendant raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his incompetency by a preponderance of the evidence.").

The court now turns to petitioner's procedural due process claim. To prevail on a procedural due process claim, the defendant must establish that the trial court ignored facts raising a "bona fide doubt" regarding the defendant's competency to stand trial. See Pate, 383 U.S. at 384–86. As stated, petitioner has not met such burden. Rather, the record reflects that the trial court adequately addressed the issue of competency. (See Resp't's Mem. Ex. 3, p. 8). Thus, petitioner has not demonstrated that the MAR court's decision regarding petitioner's substantive or procedure due process claims constituted an unreasonable determination of the facts or a decision contrary to or involving an unreasonable application of Supreme Court precedent. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Therefore, respondent's motion for summary judgment is GRANTED as to petitioner's due process claim.

b.    Ineffective Assistance of Counsel

In his second claim, petitioner generally asserts that he received ineffective assistance of trial and appellate counsel in violation of the Sixth Amendment to the United States Constitution.

---

[2] Petitioner instead submitted evidence to support the trial court's finding of competency to stand trial. Specifically, petitioner submitted an April 20, 2015, letter from psychologist Dr. James H. Hilkey indicating that Dr. Hilkey observed no evidence to question petitioner's competency to assist his counsel at his April 2013 trial. (Id. (DE 1-4), p. 10).

10

Petitioner raised ineffective assistance of trial and appellate counsel in his MAR, and the superior court denied his ineffective assistance of counsel claims.

The Sixth Amendment right to counsel includes the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must establish a two-prong test. First, a petitioner must show that the counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time. Id. This court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Petitioner must overcome "a strong presumption that counsel's representation was within the wide range of reasonable professional assistance" and establish "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed [him] by the Sixth Amendment." Id.; Harrington, 562 U.S. at 88; see Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008). For the second prong, petitioner must show there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. Even then, however, habeas relief may be granted under Strickland only if the "result of the proceeding was fundamentally unfair or unreliable." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

1. Ineffective Assistance of Trial Counsel

Petitioner raised several ineffective assistance of trial counsel claims in his MAR, including: (1) failure to communicate meaningfully with petitioner; (2) failure to prepare for trial; (3) failure to file pretrial objections and motions to exclude or limit objectionable testimony and evidence; (4) failure to interview prosecution and defense witnesses; (5) failure to interview prosecution for detailed key information in proceeding to trial; (6) failure to prepare evidence and impeachment

11

materials for key prosecution witnesses; and (7) failure to raise objections to the trial court's confusing and erroneous jury instructions. (Pet. Attach. (DE 1-2), p. 20). The superior court conducted a detailed analysis of petitioner's ineffective assistance of trial counsel claims, and found the following facts: trial counsel's fee application rebutted petitioner's claims that counsel failed to prepare for trial; trial counsel filed numerous pre-trial motions; trial counsel called eight witnesses to testify on petitioner's behalf; petitioner failed to identify any other witnesses who were not interviewed by trial counsel who should have been interviewed, or what such witnesses would have testified; petitioner failed to "identify what evidence was not prepared and what impeachment materials [were] available to use when cross-examining 'key prosecution witnesses';" and trial counsel withdrew the request for a jury instruction on the defense of accident "for the logical reason that it would have allowed the jury to consider culpable negligence as a theory of criminal liability." (Resp't's Mem. Ex. 3, pp. 1-5). After making these findings, the MAR court concluded that petitioner "was represented by competent counsel who afforded him effective, reasonable and professional representation throughout the proceedings. The [defendant] has not demonstrated that his counsel's performance was deficient[.] Nor has the defendant demonstrated that the deficient performance prejudice the defendant." (Id. 5).

The court agrees with the analysis set forth by the MAR court. (See id. pp. 1-5). The court likewise finds that petitioner has not presented any evidence to support his ineffective assistance of counsel claims. Petitioner, instead, offers only mere speculation and conclusory allegations, which are insufficient to establish ineffective assistance of counsel. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir.

12

1999). Accordingly, crediting counsel's strategic decisions in this action, petitioner has not demonstrated that his trial counsel acted unreasonably.

The court next turns to the prejudice prong of the Strickland test. Petitioner has not presented evidence sufficient to demonstrate a reasonable probability that the result of the proceedings would have been different if counsel had acted differently, particularly in light of the other evidence presented at trial. See Harrington, 562 U.S. at 111-112. As a result, petitioner has not satisfied the prejudice prong of the Strickland test. Based upon the foregoing, petitioner has not demonstrated that the MAR court's denial of petitioner's ineffective assistance of trial counsel claims constituted an unreasonable determination of the facts or a decision contrary to or involving an unreasonable application of Supreme Court precedent. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Therefore, respondent's motion for summary judgment is GRANTED for this claim.

2. Ineffective Assistance of Appellate Counsel

Petitioner asserts that his appellate counsel was ineffective because he did not raise the following issues on appeal: failure to instruct the jury on the defense of accident; double jeopardy; and that the admission of prior bad acts testimony constituted prejudicial error. Petitioner raised this claim in his MAR, and the superior court denied the claim.

To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that counsel's representation was objectively unreasonable and that a reasonable probability exists that, but for the attorney's error, the petitioner would have prevailed on his appeal. Smith v. Robbins, 528 U.S. 259, 285 (2000) (citing Strickland, 466 U.S. at 687–88). Appellate counsel is not

13

required to assert all non-frivolous issues on appeal, "but rather may select from among them in order to maximize the likelihood of success on appeal." Smith, 528 U.S. at 288. Reviewing courts must presume that in determining which issues to appeal, appellate counsel selected those issues most likely to afford relief. Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).

The MAR court rejected petitioner's ineffective assistance of appellate counsel claims. As stated above, the MAR court determined that petitioner's trial counsel made a strategic decision to withdraw his request for a jury instruction on the defense of accident to avoid consideration of culpable negligence as a theory of criminal liability. (Resp't's Mem. Ex. 3, pp. 1-5). As for the issue of double jeopardy, the court of appeals addressed the issue, and as set forth in more detail below, petitioner's double jeopardy claim is meritless. The MAR court further found that "while appellate counsel did not argue that the admission of prior bad acts constituted prejudicial error, the trial court ... [made] very specific written findings of fact and conclusions of law after hearing all such prior bad act testimony outside of the presence of the jury during a voir dire of that testimony." (Id. p. 6).

The court agrees with the MAR court's analysis with respect to petitioner's ineffective assistance of appellate counsel claim. Petitioner has not presented any evidence to support his ineffective assistance of appellate counsel claim. See Nickerson, 971 F.2d at 1136. Based upon the foregoing, petitioner has not demonstrated that his appellate counsel's representation was objectively unreasonable. Petitioner, additionally, has not presented evidence to establish that a reasonable probability exists that, but for the attorney's error, he would have prevailed on his appeal. Thus, petitioner's ineffective assistance of appellate counsel claim is meritless, and respondent's motion for summary judgment is GRANTED for this claim.

14

c.  Inconsistent Verdict

In his third claim, petitioner asserts that he received inconsistent verdicts for his conviction for the intentional infliction of a serious bodily injury to a child in violation of N.C. Gen. Stat. § 14-318.4(a3), and for the willful act or grossly negligent omission resulting in a serious bodily injury to a child in violation of N.C. Gen. Stat. § 318.4(a4), because the two offenses are mutually exclusive. Petitioner raised this claim on direct appeal, and the court of appeals denied it on the merits. The court of appeals in considering petitioner's inconsistent verdict claim found as follows:

> Here, Defendant was convicted of two counts of felony child abuse under two separate subsections of N.C. Gen. Stat. § 14–318.4. The first count, child abuse inflicting serious bodily injury in violation of § 14–318.4(a3), required the State to prove that Defendant (1) is a parent or any other person providing care to or supervision of a child less than 16 years of age; and (2) intentionally inflicted any serious bodily injury to the child. See N.C. Gen. Stat. § 14–318.4(a3) (2013).[]
>
> Defendant's second count, child abuse by willful act or negligent omission showing a reckless disregard for human life resulting in serious bodily injury, required the State to establish that (1) Defendant is a parent or any other person providing care to or supervision of a child less than 16 years of age; (2) Defendant's willful act or negligent omission in the care of the child showed a reckless disregard for human life; and (3) the act or omission resulted in serious bodily injury to the child. See N.C. Gen. Stat. § 14–318.4(a4). . . .
>
> Here, evidence was presented from which a reasonable juror could conclude that Defendant both (1) committed a willful act or negligent omission showing a reckless disregard for human life resulting in a serious bodily injury to Amy by leaving her unattended in a bathtub with the water on; *and* (2) intentionally inflicted a serious bodily injury to Amy thereafter by immersing her in scalding water.
>
> As such, the jury could have reasonably concluded that two separate, successive acts of felonious child abuse occurred—one causing a

15

> serious bodily injury through a reckless disregard for human life and one intentionally causing such an injury.

Mosher, 761 S.E. 2d at 206-207, 208.

Generally, inconsistent verdicts are permitted under federal law. See United States v. Powell, 469 U.S. 57, 68-69 (1984); Hess v. Medlock, 820 F.2d 1368, 1374–75 (4th Cir.1987) (citation omitted). Accordingly, petitioner has not identified a violation of federal law, and is not entitled to habeas relief for this claim. To the extent petitioner alleges that the two convictions violate the Double Jeopardy Clause of the Fifth Amendment to the United State's Constitution, petitioner still is not entitled to habeas relief. The Double Jeopardy Clause prohibits (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. See North Carolina v. Pearce, 395 U.S. 711, 717 (1969), overruled on other grounds by, Alabama v. Smith, 490 U.S. 794 (1989).

The Supreme Court addressed whether two offenses are the same for purposes of double jeopardy in Blockburger v. United States, 284 U.S. 299 (1932). In Blockburger, the Court stated that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." Id. at 304. In Brown v. Ohio, 432 U.S. 161 (1977), the Court recognized that Blockburger established the test "for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment." Id. at 166. As long as each offense requires proof of a fact which the other does not, a substantial overlap in the evidence presented to prove the offenses does not violate the double jeopardy clause. Id.

Here, there is substantial evidence to support a jury finding that petitioner was guilty of two

16

separate and sequential offenses. Specifically, a reasonable juror could conclude that petitioner both acted with negligence when he left Amy unattended in the bathtub, and that he then intentionally inflicted serious bodily injury to Amy by deliberately immersing her in water. See Mosher, 761 S.E.2d at 207. Because each conviction required proof of a fact that was not necessary for the other, there was no violation of double jeopardy under Blockburger. Based upon the foregoing, petitioner has not shown that the court of appeal's decision constituted an unreasonable determination of the facts or a decision contrary to or involving an unreasonable application of Supreme Court precedent. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Therefore, respondent's motion for summary judgment is GRANTED for this claim.

   d.  Failure to Consider Mitigating Factors

In his fourth claim, petitioner alleges that the trial court erred by not considering the undisputed evidence of mitigating factors at sentencing. In his amended MAR, petitioner asserted that the superior court failed to consider the following facts when sentencing him: his military history; his awards for service and bravery; and his history of mild traumatic brain injury, post-traumatic stress disorder, agoraphobia, depression, stuttering-tic disorder, concussion as a cognitive impairment, anxiety, tinnitus, and involuntary muscle movement. (Pet. (DE 1-1), pp. 11-12). The MAR court adjudicated this claim, and denied it on the merits. Specifically, the MAR court found as follows:

> 10. The defendant's claim that his counsel failed to present or uncover evidence in the defendant's background is without merit. During the direct examination of the defendant, defense counsel elicited information regarding defendant's civilian and military background. Testimony was elicited that the defendant had joined the

17

> USMC twice, had served overseas on two deployments in Iraq and two deployments in Afghanistan for a total of four deployments, that the defendant had been wounded and received a Purple Heart, five Navy achievement medals, four combat action ribbons and other unit ribbons and was 100% medically retired because of sustaining "my fifth I.E.D. blast." [T. Page 706]. The jury heard testimony about the defendant's marriages and his biological son and his stepchildren. The jury and the trial judge heard extensive information about the defendant and his background during the trial in this case.

(Resp't's Mem. Ex. 3, p. 7).

N.C. Gen. Stat. § 15A-1340.16(a) requires the North Carolina trial court to "consider evidence of aggravating or mitigating factors present in the offense that make an aggravated or mitigated sentence appropriate, but the decision to depart from the presumptive range is in the discretion of the court." Id. As explained by the MAR court, the record reflects that the superior court considered mitigating evidence when sentencing petitioner. In any event, petitioner's claim raises issues of state law, which are not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67 (1991); see also, Minton v. Perry, No. 1:12CV497, 2014 WL 5605632, at *8 (M.D.N.C. Nov. 4, 2014) (finding that alleged failure to consider "at least eight mitigating factors" was not cognizable on federal habeas review), appeal dismissed, 594 F. App'x 192 (4th Cir. 2015). Based upon the foregoing, respondent's motion for summary judgment for this claim is GRANTED.

B.   Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to

dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, "the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" Buck v. Davis, No. 15-8049, 2017 WL 685534, at *11 (Feb. 22, 2017) (quoting Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003)); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims

19

debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is DENIED.

## CONCLUSION

For the foregoing reasons, the court GRANTS respondent's motion for summary judgment (DE 9). The certificate of appealability is DENIED, and the clerk is DIRECTED to close this case.

SO ORDERED, this the 21 day of February, 2018.

*Terrence Boyle*
TERRENCE W. BOYLE
United States District Judge